DEL
F.#2024R00023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                          24-CR-050 (HG)

JOHN RAGANO,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS, FOR A BILL OF PARTICULARS
AND FOR DISCOVERY MATERIALS


BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


DEVON LASH
Assistant U.S. Attorney
(Of Counsel)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT …………………………………………………………3

BACKGROUND …………………………..…....………………………………………3

    I.  Factual Background …………………………………………………………………3

    II.  The Indictment ……………………………………………………………………8

    III. Discovery……………………………………………………………………….... 9

ARGUMENT ……………………………………………………………………………10

    I.  The Indictment Should Not Be Dismissed …………………………………………10

        A.  Applicable Law ……………………………………………………………10

        B.  Discussion  …………………………………………………………………13

    II.  The Court Should Deny Ragano's Motion for a Bill of Particulars. . . . ………………16

        A.  Applicable Law………………………………………………………… .17

        B.  Discussion ……………………………………………………………………19

    III. Ragano's Discovery Motions Are Moot or Should Be Denied. . . . . . . . …………………20

CONCLUSION …………………………………………………………………………22

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in response to defendant John Ragano's motion to dismiss the Indictment, or, in the alternative, for a bill of particulars, and for additional discovery materials.  See ECF Dkt. No. 19 (the "motion" or "Mot.").  For the reasons set forth below, the government respectfully submits the motion should be denied in its entirety.

BACKGROUND

I.      Factual Background

John Ragano, a soldier in the Bonnano crime family of La Cosa Nostra, was arrested on September 14, 2021 pursuant to an arrest warrant and Indictment charging him with (1) conspiracy to commit fraud in connection with means of identification, in violation of 18 U.S.C. § 1028(f) (Count Six); (2) fraud in connection with means of identification, in violation of 18 U.S.C. § 1028(a)(7) (Count Seven); (3) extortionate collection of credit conspiracy, in violation of 18 U.S.C. § 894(a) (Count Ten); (4) extortionate collection of credit, in violation of 18 U.S.C. § 894(a) (Count Eleven); and (5) conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846 (Count Twelve).  See United States v. Alimena et al. (Ragano), 21 CR 466 (HG) (hereinafter "Alimena").

These charges arose from an investigation initiated in July 2020 by the Federal Bureau of Investigation ("FBI") and other law enforcement agencies into the extortion of a senior official of a Queens, New York labor union by members of the Colombo crime family.  During the investigation, law enforcement officers uncovered several illegal schemes involving Ragano in 2020 and 2021, including a loansharking scheme with several of his Colombo crime family co-defendants.  In October 2020, Michael Uvino (a co-defendant in Alimena) loaned $100,000 to an

individual (hereinafter "John Doe").[1]  John Doe was required to make weekly $1,500 interest payments to Uvino and Vincent Ricciardo (another <u>Alimena</u> co-defendant).  These payments did not affect the principle of the loan.  In approximately February 2021, Ragano became involved in this loansharking scheme by loaning John Doe an additional $150,000.  As with the first loan, John Doe made weekly interest payments to Ragano for approximately $1,800 a week.  These payments did not reduce the principle of the loan.

On November 28, 2022, Ragano pleaded guilty in <u>Alimena</u> to conspiracy to commit extortionate collection of credit in connection with his loan to John Doe.[2]  At his plea hearing, under oath, Ragano stated he was guilty of the charged conspiracy to commit extortionate collection of credit and that his guilty plea was voluntary and no one threatened or forced him to plead guilty or made any promises to him outside those in plea agreement.  Tr. of Plea Hearing at 20-21, <u>United States v. Alimena et al. (Ragano)</u>, 21 CR 466 (HG) (Nov. 28, 2022).  Ragano provided the following explanation to the Court:

| | |
|---|---|
| RAGANO: | I lent the victim money and I charged him more than I supposed to per week, and that was pretty much it. |
| COURT: | And where did this occur? |
| RAGANO: | In Long Island. |
| COURT: | Which county? Do you remember? |
| RAGANO: | Nassau. |
| COURT: | And what was the amount that you lent? |
| RAGANO: | 150,000. |
| COURT: | And do you recall what interest rate you were charging? |
| RAGANO: | I don't remember the rate. I know it was like $1,800 a week. |
| COURT: | And that was just interest or is that a payoff of principle? |
| RAGANO: | Well, that was pay off and interest, I guess. |

On April 11, 2023, Ragano was sentenced by the Court to 57 months' incarceration on each count to be served concurrently.  He self-surrendered for his sentence on July 10, 2023.

---

[1]    This individual was referred to in the <u>Alimena et al.</u> Indictment as John Doe #2.

[2]    Ragano also pleaded guilty to conspiracy to commit fraud in connection with means of identification.

4

In 2022 and 2023, despite Ragano's arrest, court supervision, guilty plea and sentence, Ragano continued to pressure John Doe to make payments on the extortionate $150,000 loan, including during at least one encounter at the Eastern District federal courthouse where Ragano was attending a status conference in <u>Alimena</u> on the loansharking charges.  On or about November 15, 2022, Ragano approached John Doe at the Eastern District federal courthouse where Ragano was attending a status conference in <u>Alimena</u>.  Ragano asked John Doe if he maintained the same cellular telephone number and address and told John Doe that his Ragano's friend (hereinafter Co-Conspirator #1) (whose first name Ragano also provided to John Doe) would contact John Doe to begin collecting payments on the loan on Ragano's behalf.  As Ragano promised, Co-Conspirator #1 later contacted John Doe by phone.  While John Doe replied to Co-Conspirator #1's messages, he did not make the payments to Co-Conspirator #1 that Ragano had directed him to.  In early January 2023, Ragano himself called John Doe from Co-Conspirator #1's phone and left John Doe a voicemail.  In the voicemail, Ragano said:  "What's going on [redacted]? Happy New Year, Happy New Year, I haven't heard from you. What's the story? How you making out? Gimme a call. Bye."  While Ragano did not mention the loan payments he'd previously demanded of John Doe, his message was clear:  John Doe had not paid ("I haven't heard from you?"), and he wanted to know why ("What's the story?").

John Doe and his counsel met with the government, in part, due to John Doe's fears regarding Ragano and his efforts to collect payment.  John Doe later began working with the FBI, consensually recorded his interactions with Co-Conspirator #1 and Ragano.  These included a March 25, 2023 meeting with Co-Conspirator #1, which John Doe consensually recorded.  At this meeting, Co-Conspirator #1 explained that Ragano wanted John Doe to repay the entire amount of the loan.  Co-Conspirator #1 explained that "nobody's looking for anybody to get hurt."

| | |
|---|---|
| CC#1: | Well, he was hoping you came up with everything. |
| John Doe: | Right. |
| CC #1: | Whatever it was you owed him. |

. . .

| | |
|---|---|
| CC#1: | Yea, listen, at the end of the day, he just wants all this to go away, so- |
| John Doe: | Right, right, yeah. |
| CC#1: | So, that's it, there's no, nobody's looking for, nobody's looking for anybody to get hurt, nobody's looking to hurt your pocket or hurt his pocket, just- |
| John Doe: | Yeah. |

In discussing payment to Ragano, Co-Conspirator #1 made clear that the collection of loan is underwritten by the threat of violence, and if John Doe does not pay, he will be hurt.

On March 31, 2023, John Doe again met Co-Conspirator #1.  John Doe consensually recorded the meeting in which they again discussed the loan.  During the meeting, John Doe and gave $1,000 to Co-Conspirator #1 for Ragano.  Despite the payment, Co-Conspirator #1 told John Doe that Ragano was "a little upset" that loan was outstanding:

| | |
|---|---|
| CC#1: | Listen, at the end of the day, he was a little upset that, you know, you was going on it for a while- |
| John Doe: | Right, right, right. |
| CC#1: | But that was, shit happens, so he's gona be happy that everything's back on point and, it's good to know then to not know. |
| John Doe: | Yeah, yeah, all right. |

On April 15, 2023, John Doe paid another $1,000 to Ragano (via Co-Conspirator #1).  At this meeting, which John Doe consensually recorded, Co-Conspirator #1 called Ragano and put him on speaker phone so Ragano and John Doe could speak briefly.  Before the call, Co-Conspirator #1 explained that Ragano's phone has a "fed phone," i.e., the phone was monitored by the Pretrial Services Department.  Co-Conspirator #1 cautioned John Doe not to say John Doe's name over the "fed phone."  During the call, Ragano and John Doe exchanged pleasantries, and

Ragano ended the conversation stating, "All right thank you, thank you, be good, I appreciate it."

On April 27, 2023, John Doe met Co-Conspirator #1 and paid $1,000 to Ragano. Two days later, on April 29, 2023, Co-Conspirator #1 met Ragano and the men called John Doe from Co-Conspirator #1's phone via Facetime so as to avoid detection on Ragano's "fed phone." During the call, which John Doe consensually recorded, Ragano encourage John Doe to make money at work "and you can take care of me," in reference to the loan.

In June 2023, Co-Conspirator #1 sent multiple messages and placed calls to John Doe to arrange for additional payments for Ragano. In response to this increased outreach, John Doe told Co-Conspirator #1 that he (John Doe) needed to discuss "an issue" with the loan with Ragano in person. During a June 30, 2023 meeting, Co-Conspirator #1 said Ragano agreed to meet with John Doe at Ragano's workplace. In a conversation, which John Doe consensually recorded, Co-Conspirator #1 explained, "You can meet him [Ragano] right now, go, or whenever you want, go to his job, he told me to tell you that. [Intersection of Ragano's workplace], right there, that's the spot." Co-Conspirator #1 explained Ragano worked Monday through Saturday, and John Doe could go there, "any Monday to Saturday." John Doe asked if Ragano needed to know the specific date, and Co-Conspirator #1 replied, "No, just whenever, he told me to let you know, that's the address, go there, you don't gotta let me know."

On July 5, 2023, John Doe went to Ragano's workplace to discuss the loan. John Doe, who consensually recorded the meeting, told Ragano he was going to stop repaying the loan ("I gotta end this thing."). John Doe explained that he wouldn't continue paying because John Doe believed Ragano was cooperating with the government (an accusation which Ragano vehemently denied). Ragano then accused John Doe of cooperating with the government and demanded John Doe remove all his clothes (Ragano: "Okay, well then take off your fucking shit

right now my man.  Take off your fucking pants right now, lemme see, I want to see.").  At Ragano's insistence, John Doe took off his clothing.  At that point, two men at Ragano's workplace walked up behind Ragano, one man was holding a tire iron and the other a crowbar.  Ragano then told John Doe that John Doe better pay the money Ragano believed he was owed.

| | |
|---|---|
| Ragano: | You owe me my fucking money, let's see how you're gonna do when I get out. |
| John Doe: | Okay. |
| Ragano: | You want to duck me right now? Fine, that's what I want to know. |
| John Doe: | I'm not ducking you, I'm here, I'm here. |
| Ragano: | So if I fucking slap the shit out of you, you're gonna tell on me? |
| John Doe: | No. |
| Ragano: | I try to make this like a friendly thing- |
| John Doe: | [UI] |
| Ragano: | I said you give me my fucking money and we'll call it even. |

Ragano made explicitly clear that John Doe owed Ragano his "fucking money," and if John Doe did not pay, Ragano would harm him when Ragano was released from prison ("let's see how you're gonna do when I get out.").  Ragano also asked whether John Doe intended to stop making payments ("you want to duck me?") and explained what would happen if John Doe stopped making payments — Ragano would "slap the shit out of" John Doe.  The encounter ended with Ragano promising that he would see John Doe when Ragano got out of prison, and reminding John Doe that Ragano knew where John Doe lived.

| | |
|---|---|
| Ragano: | You fucking scumbag. |
| John Doe: | Okay. |
| Ragano: | I'll see you when I get out tough guy. |
| John Doe: | Okay. |
| Ragano: | I'll see you when I get out. |
| John Doe: | All right. |
| Ragano: | Don't forget I know where you're at now. |

II.    The Indictment

On February 2, 2024, a grand jury sitting in the Eastern District of New York

returned the Indictment, ECF Dkt. No. 1, charging Ragano with extortionate collection of credit conspiracy, in violation of Title 18, United States Code, Section 894(a)(1) (Count One); extortionate collection of credit, in violation of Title 18, United States Code, Section 894(a)(1) (Count Two); harassment of a witness, in violation of Title 18, United States Code, Section 1512(d)(2) (Count Three); and witness tampering, in violation of Title 18, United States Code, Section 1512(b)(3) (Count Four).

Counts One and Two stem from Ragano's continued efforts, beginning in November 2022, to collect payments from John Doe in connection with the extortionate $150,000 loan that formed the basis of the charges in _Alimena_.  Counts Three and Four stem from interactions and communications between and among Ragano, Co-Conspirator #1, and John Doe between November 2022 and July 2023, and Ragano's intent to hinder, delay or prevent the communication to a federal law enforcement officer about Ragano's efforts to contact John Doe and to collect the money payments from John Doe for the extortionate loan, despite Ragano's guilty plea, conviction and sentence.

III.    Discovery

To date, the government has produced the following discovery:

- Twenty-five audio recordings created between January 1, 2023, and July 31, 2023, which feature statements by Ragano or Co-Conspirator #1, or both, and the specific dates and times at which the conversations occurred;

- Draft and partial transcripts of the above-listed recordings;

- Text messages sent or received by Co-Conspirator #1 on various dates in December 2022, January 2023, May 2023, and June 2023;

- Toll records for cell phones used by Ragano and Co-Conspirator #1;

- Various documents related to <u>Alimena</u>, 21 CR 466; and

- Additional statements by Ragano in the government's possession and documents related to Ragano's criminal history.

The discovery was accompanied by a cover letter detailing the material produced, and the audio and other documents were organized by date into folders, the audio was accompanied by draft transcripts identifying the participants in the conversation and transcribing the portions of the recordings.

<u>ARGUMENT</u>

I.   <u>The Court Should Deny the Motion to Dismiss Any Count in the Indictment</u>

For the reasons set forth below, the government respectfully submits that the Counts One through Four of the Indictment sufficiently state the charged offenses and there is no lawful basis for their dismissal.

A.   <u>Applicable Law</u>

Indictments are governed by Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which provides that an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). As the Second Circuit has explained, Rule 7(c)

> performs three constitutionally required functions: It fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation; it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury.

<u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999).

An indictment satisfies Rule 7(c) – and therefore the requirements of the Fifth and Sixth Amendments – if it "'first, contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)); United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (rejecting argument that extortionate extensions of credit was insufficiently pleaded).

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [it] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished." Hamling, 418 U.S. at 117-18 (citations and internal quotations omitted); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992); United States v. Brooks, No. 06-CR-550 (JS), 2009 WL 3644122, at *2 (E.D.N.Y. Oct. 27, 2009) (citing Fed. R. Crim. P. 7(c)(1)). When determining whether or not a count sufficiently alleges a violation, the indictment should be read "in its entirety." United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992).

Motions to dismiss an indictment must satisfy a high standard and are disfavored. See United States v. Bustos de la Pava, 268 F.3d 157, 165 (2d Cir. 2001) ("[D]ismissal of an indictment is an extraordinary remedy reserved for extremely limited circumstances implicating fundamental rights.") (citation and internal quotation marks omitted); see also United States v. Kerik, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) ("A defendant seeking to dismiss counts under Rule 12 must satisfy a high standard") (citation and internal quotation marks omitted); Brooks, 2009 WL 3644122, at *2-*3 (same).

The Second Circuit has held that an indictment that tracks the language of the statute is sufficient to meet these notice requirements. See United States v. Flaharty, 295 F.3d 182, 198 (2d Cir. 2002) ("[A]n indictment need only track the language of the statute and, if necessary

to apprise the defendant of the nature of the accusations against him . . . state time and place in approximate terms."); United States v. Citron, 783 F.2d 307, 314 (2d Cir. 1986) ("Where . . . an indictment tracks the statutory language and specifies the nature of the criminal activity . . . it is sufficiently specific to withstand a motion to dismiss."); Stavroulakis, 952 F.2d at 693 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."); United States v. Bernstein, 533 F.2d 775, 786 (2d Cir. 1976) (observing that the Second Circuit has "consistently sustained indictments which tracked the language of the statute and, in addition, do little more than state time and place in approximate terms.").

On a pretrial motion to dismiss, the court must accept all factual allegations in the indictment as true and "the sufficiency of the evidence is not appropriately addressed on a pre-trial motion to dismiss an indictment." United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998); see also United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"). A defendant's factual arguments challenging facially valid pleadings do not justify pretrial dismissal of the indictment. The government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. See, e.g., United States v. Reale, No. S4 96-CR-1069 (DAB), 1997 WL 580778, at *6-7 (S.D.N.Y. Sept. 17, 1997) ("As the Government aptly states in its opposition, 'while [D]efendants' arguments may properly be considered on a motion under Rule 29 of the Federal Rules of Criminal Procedure after the Government presents its proof, they do not support dismissal of the Indictment at this stage of the proceedings.'"). A motion to dismiss a properly pleaded indictment "confuses standards of pleading with standards of proof." Id. at *7;

see also, e.g., United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) ("The Defendants, however, had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) ("Defendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion."); United States v. Cassese, 273 F. Supp. 2d 481, 484-85 (S.D.N.Y. 2003) (same and collecting cases).

B.    Discussion

Ragano has more than sufficient notice of the charged crimes in the Indictment, and there is no basis for the dismissal of any count.

Under governing Second Circuit precedent, to be sufficient, an indictment need only identify the offense with which the defendant is charged, track the language of the statute and, if necessary, state time and place of the offense in approximate terms.  Count One through Four of the Indictment clearly meets that low standard.  The charges track the language of the statutes, state the time and place of the alleged crimes and identify the victim as John Doe (whose identity is known to both the grand jury and the defendant).  As to Counts One and Two, which charge extortionate collection of credit and conspiracy to commit the same, courts have found such pleadings are sufficiently specific to pass muster.  United States v. Yannotti, 541 F.3d 112, 127

(2d Cir. 2008);[3] <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir.1999).  For instance, in <u>United States v. Galestro</u>, No. 06-CR-285 (ARR), 2008 WL 2783360 (E.D.N.Y. July 15, 2008), the district court considered nearly identical charging language on a defendant's motion to dismiss and found the Indictment was sufficiently specific.[4]  The district court found "the government has provided enough 'factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'"   <u>Id.</u> at *3 (internal citations omitted).  The court added that the "defendant can use those dates and the identity of the victim, when fully established at trial, to interpose a double jeopardy defense if appropriate in future litigation." <u>Id.</u> at *4.

As to Counts Three and Four, which charge witness-related offenses, the charges track the language of the statutes, state the time and place of the alleged crimes and identify the victim.  <u>United States v. Hilliard</u>, No, 19-CR-358 (PKC) (E.D.N.Y.), Minute Entry dated May 14, 2020 (defendant withdrawing motion to dismiss witness-related charges); <u>see also</u> <u>Jordan v. United States</u>, No. 08-CR-124 (DLC), 2019 WL 4126439, at *6 (S.D.N.Y. Aug. 30, 2019) (stating

---

[3]       For example, the relevant portions of the indictment in <u>Yannotti</u> charged the following:  "Conspiracy to Make Extortionate Extensions of Credit: From in or about 1993, up through and including in or about 2002, in the Southern District of New York, the Eastern District of New York, and elsewhere, Michael Yannotti ... and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to make extortionate extensions of credit; ... (c) From in or about 1993, up through and including in or about 2002, in the Southern District of New York, the Eastern District of New York, and elsewhere, Michael Yannotti ... and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit." <u>Yannotti</u>, 541 F.3d at 127 n.9.

[4]       For example, as to Racketeering Act 5B and Count 11, the Indictment in <u>Galestro</u> charged: "In or about and between January 2004 and January 2006, both dates being approximate and inclusive, within the Eastern District of New York, the defendant GINO GALESTRO, together with others, did knowingly and intentionally make an extortionate extension of credit to John Doe # 2."  <u>Galestro</u>, 2008 WL 2783360, at *4.

elements).

In addition to the sufficient allegations in the Indictment, the government has provided Ragano with additional information to put him on "notice of the charge to be met." Stavroulakis, 952 F.2d at 693.  For example, the government has provided audio recordings, which feature statements by Ragano or Co-Conspirator #1, or both, along with draft and partial transcripts, text messages, phone records, and information related to the underlying extortionate loan and the criminal prosecution of that extortionate loan, among other documents.  This information shows Ragano's months-long campaign, despite his pending criminal conviction, to collect payments from John Doe.  It also shows that Ragano recruited another individual to pressure John Doe, because he knew any contact with John Doe was prohibited.  Courts have repeatedly found that such disclosures ensure the defendant is on notice of the charges against him. See, e.g., Yannotti, 541 F.3d at 127 (holding that indictment was sufficient in light of language of the alleged racketeering act itself, the defendant's awareness of "the identities of any victims and co-conspirators, even if that information was not pled in the indictment," together with the discovery provided by the government); United States v. Raniere, 384 F. Supp. 3d 282, 311 (E.D.N.Y. 2019) (same); see also Stringer, 730 F.3d at 124-25; Price, 443 F. App'x at 580. Ragano's motion thus fails to meet the high bar required to establish his entitlement to dismissal.

Ragano argues he lacks notice as to the accusations against him.  Mot. at 8. However, defense counsel expressly acknowledged at the May 21, 2024 status conference (as well as throughout his motion) that there are "no secrets" about the charges Ragano faces.  To be sure, Ragano is aware of (i) the origin and amount of the loan he is charged with extending and attempting to collect, (ii) the identity of John Doe, (iii) the identity of Co-Conspirator #1, (iv) the time period in which he is alleged to have extorted John Doe, (v) 25 specific dates on which

conduct occurred, (vi) 25 audio-recorded and variously transcribed conversations in which he or Co-Conspirator #1 or both discussed the loan, and (vii) the locations at which several specific conversations occurred, including at Ragano's workplace.

As to Count One and Two, Ragano claims he is unaware of the "extortionate means" used to collect this loan.  As to Counts Three and Four, Ragano argues he is entitled to know how the government intends to prove his knowledge and intent.  Ragano, however, is not entitled to preview the government's prosecutorial theories or methods of proof in advance of trial. United States v. Shkreli, 15-CR-637 (KAM), 2016 WL 8711065, at *4 (E.D.N.Y. 2016) (collecting cases); United States v. Sattar, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004).  Ragano is entitled to fair notice of the crimes he is charged with — not "the precise manner in which the defendant committed the crimes charged."  Sattar, 314 F. Supp. 2d 279 at 318.

Indeed, despite his alleged lack of notice, Ragano simultaneously argues in great detail that the government has somehow misconstrued the audio-recorded conversation in which he and Co-Conspirator #1 attempted to collect the loan from John Doe, demonstrating that he does in fact have notice of the government's theory.  Ragano confuses the standards of pleading with the standards of proof.  It is well-settled that a defendant's interpretations of the evidence are not a basis to dismiss an Indictment.  The government is entitled to marshal and present its evidence at trial.  Reale, 1997 WL 580778, at *6-7.

In sum, there is no basis to dismiss the Indictment in this case.  The Indictment clearly states the charges against Ragano and provides enough detail to reasonably apprise the defendant of the nature of the charges against him.  That is all that is constitutionally required.

II.      The Court Should Deny Ragano's Motion for a Bill of Particulars

Ragano also moves for a bill of particulars pursuant to Fed. R. Crim. P. 7(f), arguing that he is entitled to disclosure of (i) the extortionate means applied in Counts One and Two, and

(ii) the act(s) by which the government will prove the charge in Count Three.  This is inappropriate given the language of the Indictment and the discovery provided to date, and moreover such relief is expressly prohibited by established precedent.  For the reasons stated below, Ragano's motion should be denied in its entirety.

A.    Applicable Law

The pleading standard under Fed. R. Crim. P. 7(c) is discussed at length above. Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise, and assert a double jeopardy claim. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks omitted).  If the information sought by the defendant is provided in the indictment or through some other means, a bill of particulars is not warranted. See Bortnovsky, 820 F.2d at 574. "The defendant bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it."  Shkreli, 2016 WL 8711065, at *4; United States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011) ("The ultimate test in determining whether a bill of particulars is appropriate is whether the information is necessary, not whether it is helpful to the defendant." (emphasis added and citations omitted)).

The defendant cannot use a bill of particulars as an investigative tool or as a pretrial discovery device. See United States v. Pimentel, No. 99-CR-1104 (SJ), 2001 WL 185053, at *4 (E.D.N.Y. Jan. 22, 2001) (citations omitted).  Rule 7(f) also may not be used to limit the government's evidence at trial or flush out its prosecutorial theories or methods of proof in advance

17

of trial.  See Shkreli, 2016 WL 8711065, at *4 (collecting cases); see also Sattar, 314 F. Supp. 2d at 318 ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." (citation omitted)); United States v. Albunio, No. 91-CR-0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").

"[C]ourts have routinely held that the 'wheres, whens and with whoms' of a charged offense are beyond the proper scope of a bill of particulars."  United States v. Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) (quoting Rivera, 2011 WL 1429125, at *8); see also United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) ("demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied" (collecting cases)).  The decision to grant or deny a bill of particulars is committed to the discretion of the trial court.  United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

There are three reasons animating these restrictions on the use of bills of particulars. First, the use of bills of particulars "is not comparable to discovery in civil [cases] because of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury."  Persico, 621 F. Supp. at 868 (internal quotation marks and citations omitted).  Second, the government must not be compelled "to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain away the [g]overnment's case." United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted).  Finally, the

government should not be restricted from "using proof it may develop as the trial approaches." Id. (citation omitted).

In short, it is well-settled that "[t]he government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." United States v. Carpenter, No. 18-CR-362 (ADS), 2018 WL 6933160, at *6 (E.D.N.Y. Dec. 28, 2018).

B.     Discussion

Ragano has received more than sufficient notice of the charged offenses to adequately prepare for trial and no bill of particulars is warranted. Ragano impermissibly seeks "a preview of the government's evidence and legal theories." Carpenter, 2018 WL 6933160, at *6. The Court should deny his motion.

As explained, Ragano knows the identities of the victim and his co-conspirator, the details of the loan is extended and renewed his efforts to collect, the specific dates on which he, Co-Conspirator #1 and John Doe discussed the loan, the substance of the conversation about the loan, and the locations where these conversations took place. Ragano's request for how the government will prove extortionate means and harassment go beyond the scope of the information to which he is entitled. United States v. Mandell, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) ("A bill of particulars . . . should not function to disclose evidence, witnesses, and legal theories to be offered by the government."). A bill of particulars is not permitted to allow a defendant to preview the evidence or theory of the government's case. See Pimentel, 2001 WL 185053, at *4. Given the detail in the Indictment, the discovery provided by the government, and information provided

herein, Ragano is fully able to prepare for trial, avoid surprise and interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

III.   Ragano's Discovery Motions Should Be Denied

Ragano makes two additional requests related to the government's discovery. These requests should be denied for the reasons below.  The government has met and will continue to meet its Rule 16 discovery, and will comply with its Jencks Act (18 U.S.C. § 3500) obligations and make its required disclosures at the appropriate time prior to trial.

First, Ragano seeks "all reports or any other documentation" concerning John Doe's description of Ragano's statements to federal agents pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A) & (B) (production of defendant's oral and written statements in pretrial discovery).  Mot. at 14-15.  Because Ragano is not entitled to receive law enforcement's reports of witness statements at this time, the Court should deny this motion.

It is well established that a criminal defendant is not entitled to law enforcement's reports of witness statements — even witness statements concerning that defendant — in Rule 16 discovery.  United States v. Taylor, 707 F. Supp. 696, 701 (S.D.N.Y. 1989) (oral statements made by defendant to third parties which are later documented by a government agent are similarly not discoverable under Rule 16) (citing In re United States, 834 F.2d 283, 285–86 (2d Cir. 1987) (discussing similar holding in United States v. Viserto, 596 F.2d 531, 538 (2d Cir.), cert. denied, 444 U.S. 841, 100 S. Ct. 80, 62 L.Ed.2d 52 (1979)); see also United States v. Biaggi, 675 F. Supp. 790, 812–13 (S.D.N.Y. 1987)).

In fact, the statements Ragano seeks in discovery are explicitly carved out of the government's disclosure obligations under Rule 16.  Fed. R. Crim. P 16(a)(2).  The rule states:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the

> government or other government agent in connection with
> investigating or prosecuting the case. Nor does this rule authorize
> the discovery or inspection of statements made by prospective
> government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(2).  Should the government choose to call John Doe or the authoring agent

as government witnesses at trial, these statements will be produced pursuant to 18 U.S.C. § 3500.

Second, Ragano seeks all reports or any other documentation or agreements

concerning Co-Conspirator #1 pursuant to Federal Rule of Criminal Procedure 16(a)(1)(D).[5]  Mot

at 15.  The defendant claims this information is "relevant" to the instant motions or a future motion

he intends to file concerning the admissible of hearsay statements.   Regardless of such

documentation's relevancy to the case at hand, Ragano has identified no basis under which it is

discoverable under Rule 16 in connection with the instant motions or a future motion.   A

defendant's factual arguments challenging facially valid pleadings do not justify pretrial dismissal

of the indictment.  Nor has Ragano identified how such documentation is required under the

government's disclosure obligations in advance of Ragano's anticipated motion to exclude certain

statements under hearsay rules.  The Court should deny Ragano's motion.

---

[5]     The government believes the defendant may in fact be relying on Rule 16(a)(1)(E) (documents in the government's possession), as subsection (a)(1)(D) concerns the defendant's prior criminal record, which was already produced in discovery.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the Ragano's motion to dismiss, to receive a bill of particulars and to receive various discovery materials should be denied.

Dated: Brooklyn, New York
       June 10, 2024

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

                                        ____/s/_____
                                        Devon Lash
                                        Assistant U.S. Attorney
                                        (718) 254-6014

Cc:    Clerk of the Court (HG)
       Defense counsel (by ECF)